UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-446 |
| | § | |
| SANDRA MOHEDANO, *et al*, | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

This case stems from a dispute over the employee benefit account of Candido Paul Mohedano, Jr. Mohedano enrolled through his employer in both basic and supplemental life insurance and—at issue here—accidental death and dismemberment ("AD&D") insurance. Plaintiff Unum Insurance Company of America ("Unum") issued the policies.

Mohedano died during an altercation with his wife and plan beneficiary, Sandra Mohedano. Unum filed a Complaint against Sandra, Robert Mohedano (decedent's brother), and Candido Paul Mohedano, Sr.[1] (together, "The Mohedanos"). Unum notified the Mohedanos that it was unable to approve the AD&D benefit. The Mohedanos filed an amended answer and counterclaim, seeking declaratory relief. Unum and the Mohedanos then each filed motions for summary judgment.

For the reasons stated below, Unum's motion for summary judgment (Dkt. 47) will be granted and Mohedanos' motion for summary judgment (Dkt. 49) will be denied.

---

[1] Joined as temporary administer of the estate of Candido Paul Mohedano, Junior.

## I. Background

The following summary of events is based on undisputed evidence contained in the administrative record. Candido Paul Mohedano, Jr. was employed by Enterprise Products Company ("Enterprise"). Enterprise participated in the Select Group Insurance Trust Policy No. 29200 (Transportation and Public Utilities Industry Fund), issued by Unum. Mohedano became eligible for several types of benefits under this policy through his employment with Enterprise. He enrolled for basic and supplemental life[2] and AD&D benefits (together, "the Plan").[3] Mohedano designated his wife Sandra and his brother Robert as the primary and contingent beneficiaries, respectively.

### A. Terms of the Plan

The Summary of Benefits cover page lists Maine as the governing jurisdiction. The "Accidental Death and Dismemberment Insurance Benefit Information" explains that beneficiaries "will receive payment when Unum approves your death claim providing you meet certain conditions." Under the terms of the policy, "[t]he benefit will be paid only if an **accidental bodily injury** results in one or more of the covered losses [including loss of life]." Under "***WHAT ACCIDENTAL LOSSES ARE NOT COVERED UNDER YOUR PLAN?,***" Unum states that the plan "does not cover any accidental losses caused by, contributed to by, or resulting from: . . . an attempt to commit or commission of a crime . . . [or] being **intoxicated**." The Glossary defines the following terms:

---

[2] Basic Policy 298603 (basic life: $261,000; basic AD&D: $300,000).

[3] Supplemental Policy 298604 (supplemental life: $100,000; supplemental AD&D: $392,000).

> **ACCIDENTAL BODILY INJURY** means bodily harm caused solely by external, violent and accidental means and not contributed to by any other cause.
>
> **INTOXICATED** means that your blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred.

Under "Additional Summary Plan Description Information," the Plan Administrator (here, Enterprise) administers, and is the named fiduciary of the Plan. Enterprise has legal authority to delegate its duties. The insurer (here, Unum) administers the benefits, which are provided in accordance with the Summary of Benefits. Under "**YOUR RIGHTS UNDER ERISA**," the employee may appeal a denial of rights. Under "**DISCRETIONARY ACTS**," Enterprise delegates discretionary authority to Unum to:

> [M]ake benefit determinations under the Plan. . . .  Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.
>
> Once you are deemed to have exhausted your appeal rights under the Plan, you have the right to seek court review under Section 502(a) of ERISA of any benefit determinations with which you agree. The court will determine the standard of review it will apply in evaluating those decisions.

**B.  Candido Mohedano, Jr.'s Death**

On September 7, 2013, Sandra Mohedano shot and killed her husband Candido Mohedano, Jr.  The shooting occurred after Candido, Sandra, and Candido's brother Bill had returned home from drinking at a karaoke lounge.  Sandra was charged with murder. The trial was held in the 122nd Judicial District Court of Galveston County, Texas.

Sandra testified about a history of abuse at the hands of Candido. According to Sandra, she and Candido began to argue in the car on the night of the shooting. She testified to the following: 1) he violently attacked her once they pulled into the driveway; 2) she ran into the home, grabbed the shotgun, and warned the approaching Candido to stop; 3) Candido told her, "You're dead now, bitch," and continued approaching; and 4) the shotgun accidentally discharged. Candido died from a single shot to the chest.

Bill sat in the back seat of the car when the shooting occurred. He testified to the following: 1) there was no argument on the way home, but that Sandra began attacking Candido in the driveway; 2) she threatened to kill both Candido and Bill before running inside; 3) she grabbed the shotgun with one hand and confronted Candido; and 4) she then shot and killed him.

In addition to the testimony of Sandra and Bill, the jurors heard from the 911 dispatcher, law enforcement and medical first responders, the investigators, and medical and laboratory personnel. The doctor performing the autopsy testified that Candido's blood sample contained an alcohol content of .217 grams percent, almost three times the legal driving limit in Texas. The jury returned a 'not guilty' verdict.

**C. Unum's Denial of AD&D Benefits to Candido's Beneficiaries**

Prior to the trial, Unum determined that it owed basic and supplemental life benefits to the beneficiary. It brought a Complaint pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii) seeking interpleader, depositing the benefit funds into the Court's registry. These funds were eventually distributed to Robert and Sandra Mohedano.

Unum notified the beneficiaries that it could not determine whether AD&D benefit could be paid until Unum reviewed the completed trial transcript. The Mohedanos filed an Answer and Counterclaim, seeking declaratory relief. Once the trial concluded, Unum notified the Mohedanos that the AD&D benefits were not payable. Unum determined that: 1) Candido was the aggressor in the events leading to his death; 2) his aggressive behavior contributed to his death; and 3) that Candido was engaged in the crimes of assault and terroristic threat at the time of his death.

Upon Unum's determination, the Mohedanos filed an amended Answer and Counterclaim, seeking declaratory relief. The Mohedanos also appealed the determination to Unum pursuant to the terms of the policy. They called Unum's determination arbitrary, capricious, and self-serving. They refuted Unum's claim that Sandra Mohedano was acquitted based on self-defense. They noted inconsistencies between Sandra's testimony and the evidence. They provided affidavits from two friends of Candido; a detective's report; and medical records in support of these claims. Unum denied the Mohedanos' claim for a second time. Specifically, Unum determined the following:

> Mr. Mohedano's death cannot be considered an accidental bodily injury because it was contributed to by another cause; his violent behavior and assault on his wife. He should have reasonably expected death or serious bodily injury could occur when he attacked or attempted to attack his wife, especially since she told him a few weeks earlier she would shoot him if he attacked her again. She was in possession of a firearm during the altercation in which he was the aggressor.
> The policy excludes coverage for tosses caused by, contributed to by or resulting from attempting to commit or committing a crime. Mr. Mohedano was attempting to commit or was committing the crimes of assault and

> terroristic threat when he attacked his wife just prior to her fatally shooting him in self-defense.
> It also appears the policy exclusion for being intoxicated apples in this situation. Mr. Mohedano was intoxicated at the time of his death. His intoxication appears to have caused, contributed to or resulted in a change in his behavior during which he became violent with his wife. This violence caused her to use a firearm against him to defend herself.

Dkt. 48-9. Unum then answered the Mohedano's counterclaim, seeking to have its determination upheld. The parties agree this case is governed by ERISA. They therefore submitted cross motions for summary judgment based on the administrative record for the Court's review.

## II. Standard of Review

### A. Motion for Summary Judgment

"Standard summary judgment rules control in ERISA cases." *Vercher v. Alexander & Alexander Inc.*, 379, F.3d 222, 225 (5th Cir. 2004). A movant seeking summary judgment must establish that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). The movant must "demonstrate the absence of a genuine issue of material fact." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the movant meets this burden, nonmovant must then present admissible evidence creating genuine issues of material fact for trial. *Id*. "An issue is genuine if there is sufficient evidence for a reasonable fact finder to return a verdict for the nonmovant, and material if it would affect the outcome of the lawsuit under the governing substantive law." *Humana Health Plan, Inc. v. Nguyen*, No. CV H-13-1793, 2016 WL 4718194, at *1 (S.D. Tex. Sept. 8, 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986)).

## B. ERISA Denial of Benefits Claim

Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). Under ERISA, a beneficiary whose claim is denied may seek judicial review. 29 U.S.C. § 1132(a)(1)(B). A participant or fiduciary pursuing enforcement of the terms of the plan may also seek judicial review. 29 U.S.C. § 1132(a)(3)(B)(ii).

The parties disagree on the appropriate standard of review. The Plan in issue states that Maine is the governing jurisdiction. Maine allows discretionary clauses like the one contained in the Plan. As discussed below, an Administrator's determinations made pursuant to a discretionary clause are reviewed for abuse of discretion. However, the Mohedanos assert that the Court should apply a *de novo* rather than 'abuse of discretion' standard of review. In support, they assert that: 1) the Court exercises its subject matter jurisdiction due to the diversity of citizenship between the parties; 2) under either diversity or federal question jurisdiction, Texas—rather than Maine—law controls; 3) under Texas law, discretionary clauses are prohibited and therefore void; and 4) due to the absence of a valid discretionary clause, the Court should apply a *de novo* review. The Court addresses these arguments in turn.

### *i. Subject Matter Jurisdiction and Choice of Law*

The Court exercises federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).[4] The Mohedanos argue that Texas Law—rather than Maine law, as specified in the Plan—should control pursuant to the Court's federal question jurisdiction. The Fifth Circuit has not addressed choice of law in the ERISA context under federal question jurisdiction. However, it has held that it is appropriate to apply "federal common law choice of law principles when [exercising] federal question jurisdiction over a case." *Jimenez v. Sun Life Assur. Co. of Can.*, 486 F. App'x 398, 406 (5th Cir. 2012). *Jimenez* described "three possible approaches to resolving this choice of law issue."[5] *Id*. 408. Under each approach, the Mohedanos bear the burden of establishing that this Court should not enforce the Plan's choice of law provision. See *Id*.

The Mohedanos' motion for summary judgment relies upon the Restatement (Second) of Conflict of Laws. Under Section 187(2), the law chosen by the parties would govern unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, *or*
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . .

---

[4] Subject matter jurisdiction based on diversity of citizenship may also be available, but the Court need not consider that here.

[5] These three approaches include: enforcing the policy's choice of law provision unless it is unreasonable or fundamentally unfair; applying Section 187 of the Restatement (Second) of Conflict of Laws; and enforcing the policy's choice of law absent a clear showing that the clause is unreasonable under the circumstances. *Jimenez*, 486 F. App'x at 407-08 (citations omitted). The Fifth Circuit has employed the latter two approaches in cases involving admiralty law and international disputes. *Id*.

Restatement of Conflict of Laws (Second) § 187 (Am. Law Inst. 1971).

The Mohedanos do not prevail on a 187(2)(a) argument. Despite assertions to the contrary, Maine does have a relationship to the transaction. Unum, the issuer of the Plan, is incorporated in Maine. Its principal place of business is in Maine. Its signees endorsed the Plan in Maine. Correspondence from Unum originated in, and was returned to, Maine. The Plan's cover page notes in bold that Maine is the governing jurisdiction.

The § 187(2)(b) analysis is a closer call. Maine law allows discretionary clauses like the one contained in the Plan here, while Texas law does not. Applying Maine law would therefore be contrary to the Texas statute prohibiting discretionary clauses. 28 TEX. ADMIN. CODE § 3.1203 (2010) ("[A] discretionary clause in any form . . . is prohibited."). The Mohedanos must therefore demonstrate that this policy is 'fundamental', and that Texas has a 'materially greater interest' than Maine in determining whether to allow the discretionary clause. The Mohedanos aver that "Texas bears the most significant relationship to the parties and the transaction, and has the materially greater interest." In support, they refer to the following facts: the policy holder and his beneficiaries live in Texas. The employer participating in the Plan is domiciled in Texas; benefits will be paid in Texas; and the case is being litigated in Texas.

After considering the arguments, the Court finds that the Mohedanos fail to show that the discretionary clause prohibition is a fundamental policy, or that Texas's interest

in determining whether to allow discretionary clauses is materially greater than Maine's.[6] The Court therefore Court applies Maine law. The discretionary clause is therefore valid.

### ii. Discretionary Clauses and the Proper Standard of Review

The Supreme Court of the United States held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the Administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch*, 489 U.S. at 115. Where the plan grants the Administrator discretionary authority, the determination will only be reversed if the reviewing court finds that the Administrator abused its discretion. *Id*.

### iii. Conclusion

Having determined that the Plan's discretionary clause is valid, the Court therefore reviews Unum's denial of benefits for an abuse of discretion.[7]

### III. Discussion

---

[6] The Court further finds that the Mohedanos failed to meet their burden under the two alternative approaches to show that applying Maine law is unreasonable or fundamentally unfair.

[7] In the Fifth Circuit, the Administrator's findings of fact are *always* reviewed for an abuse of discretion. *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999) ("Regardless of the Administrator's ultimate authority to determine benefit eligibility, however, factual determinations made by the Administrator during the course of a benefits review will be rejected only upon the showing of an abuse of discretion.") (citing *Pierre v. Conn.t Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991)). District courts continue to follow this mandate regarding factual determinations even where the discretionary clause is void. *See Curtis v. Metro. Life Ins. Co.*, CIVIL ACTION NO. 3:15-CV-2328-B, 2016 WL 2346739, at *10 (N.D. Tex. May 4, 2016). Unum's factual determinations—and not its interpretation of the Plan—are at issue here (i.e., was he intoxicated, was he committing a crime, was his death an accident). The Court would likely reach the same conclusion applying a *de novo* review to Unum's denial of benefits.

The Fifth Circuit recently summarized the contours of the 'abuse of discretion' standard of review when reviewing an ERISA denial of benefits claim:[8]

> We reach a finding of abuse of discretion only when the plan Administrator acted arbitrarily or capriciously. A decision is arbitrary if it is made without a rational connection between the known facts and the decision.
>
> Even though the Administrator's decision to deny benefits must be supported by substantial evidence, *substantial evidence* is merely more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Ultimately, a court's review of the Plan Administrator's decision need not be particularly complex or technical; it need only assure that the Administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end. Obviously, no court may substitute its own judgment for that of the plan Administrator.

*McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457–58 (5th Cir. 2014) (footnotes omitted) (citations omitted) (internal quotation marks omitted). *McCorkle* makes clear that a district court reviewing for abuse of discretion in an ERISA denial of claims case acts in a "very narrowly restricted" appellate role. *Id*. at 456.

The Mohedanos argue that Unum's determination not to grant the AD&D benefits to Candido's beneficiaries was improper. They also argue that Unum has an inherent conflict of interest that "severely prejudiced its decision to deny benefits." Dkt. 49, p. 20. "A conflict of interest exists when the plan Administrator 'both evaluates claims for benefits and pays benefits claims.'" *Burell v. Prudential Ins. Co. of Am.,* 820 F.3d 132, 138 (5th Cir. 2016) (quoting *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th

---

[8] The 'abuse of discretion' analysis actually involves a first, threshold step of determining whether the determination was legally correct. The Court may bypass this first step. Because the parties did not argue whether Unum's determination was legally correct, the Court elects to bypass this issue and directly engage in the 'abuse of discretion' analysis. *See McCorkle v. Metro. Life Ins. Co.,* 757 F.3d 452, 457 n.10 (5th Cir. 2014).

Cir. 2013)). However, such a conflict is "'but one factor among many that a reviewing judge must take into account' in determining whether an abuse of discretion occurred." *Id*. (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, (5th Cir. 2009). The Court has considers Unum's conflict of interest as one factor in its analysis.

As to the ultimate issue, Unum insists that it did not abuse its discretion in denying the AD&D benefits. The Court agrees. A substantial amount—if not a preponderance—of the evidence indicates that Candido's death was not accidental. It is undisputed that Candido and Sandra engaged in a physical altercation while in their parked car in the driveway; that Candido was inebriated; that Sandra went inside the home and grabbed the shotgun; and that continued to approach Sandra despite her warning that he should stop. It was therefore reasonable that Unum determined that: 1) Candido's aggressive behavior led to his death; 2) his behavior constituted the crime of assault; and 3) his intoxication further contributed to his behavior. Once Unum arrived at *any* of these three factual determinations, it had little discretion to take any action *other than* denying AD&D benefits based upon the clear language of the Plan. There was a rational connection between the known facts and Unum's decision to deny benefits. The Court therefore finds that Unum did not abuse its discretion in denying the benefits.

### IV. Conclusion and Order

As to Unum's motion for summary judgment, the Court finds that Unum demonstrated the absence of a genuine issue of material fact. The Court further finds that the Mohedanos did not meet their responsive burden to provide admissible evidence creating such an issue. Unum's motion for summary judgment is therefore **GRANTED**.

As to the Mohedanos' motion for summary judgment, the Court finds that the Mohedanos failed to meet their initial burden to demonstrate the absence of a genuine issue of material fact.  Their motion is **DENIED**.

SIGNED at Galveston, Texas, this 23rd day of February, 2017.

_____
George C. Hanks Jr.
United States District Judge